```
                  UNITED STATES DISTRICT COURT
                    DISTRICT OF CONNECTICUT

JAMES M. WARNER,                  :
                                  :
     Plaintiff,                   :
                                  :
     v.                           :    CASE NO.  3:14cv1192(DFM)
                                  :
WILLIAM T. FREEMAN, KEVIN         :
DOWD, LUKE LARUE, JUSTIN          :
LUSSIER and KRISTOPHER            :
BERNIER,                          :
                                  :
     Defendants.                  :
```

<u>RULING ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT</u>

The plaintiff, James Warner, brings this action against Putnam police officers Justin Lussier and Kristopher Bernier and Connecticut State Troopers William Freeman, Kevin Dowd and Luke Larue, alleging false arrest and malicious prosecution in violation of the Fourth Amendment. Pending before the court are the defendants' motions for summary judgment. (Doc. ##30, 43.) The motions are granted in part and denied in part.[1]

I.  <u>Background</u>

The following facts, taken from the parties' Local Rule 56(a) Statements, are undisputed unless otherwise indicated.

The plaintiff is a landscaper. A customer of his, John Fox ("Fox"), lived at 11 Tattoon Road in Woodstock, Connecticut. Fox asked the plaintiff to clean up the property across the street at

_____

[1]This is not a recommended ruling. The parties consented to the jurisdiction of a Magistrate Judge pursuant to 28 U.S.C. § 636(c). <u>See</u> doc. #33.

16 Tattoo Road.  At that address, there was a small dilapidated house on a partially wooded, overgrown lot with debris in the yard. The plaintiff had met the man who lived at 16 Tattoo Road but had never done any landscaping work for him.  The plaintiff knew that Fox did not own the 16 Tattoo Road property.

On the morning of December 9, 2013, the plaintiff and two other men drove to 16 Tattoo Road.  The plaintiff had planned to pick up leaves from his customers' lawns that day, but it was snowing so he was unable to work on leaf removal.  Instead he decided to clean up the property at 16 Tattoo Road.

The plaintiff parked his pickup truck in the driveway of 16 Tattoo Road.  He and the two other men took items from the property including, among other things, an aluminum rowboat, a cement mixer, a heater, and aluminum gutters.  They loaded everything into the bed of the plaintiff's truck.  The plaintiff did not know who owned the items.  Meanwhile, another neighbor called the police.  The caller reported that there were men on the property at 16 Tattoo Road, that the house was vacant, and that the men were taking things from the property and loading them into a truck.

The town of Woodstock does not have its own police department; it is patrolled by the Connecticut State Police.  The State Police, however, could not immediately respond to the call so Putnam police were dispatched to investigate, secure the scene and wait for the

state police if necessary.

Defendants Sergeant Justin Lussier and Officer Kristopher Bernier of the Putnam police department responded. Sergeant Lussier asked the plaintiff for identification, which he provided. The plaintiff said that he was cleaning up the property. Sergeant Lussier asked the men if they had spoken to the owner and had permission to be there. The plaintiff responded that he had knocked at the door but nobody answered. He explained that he then began to collect things to bring to the dump. Officer Bernier knocked on the front door of the residence but there was no response. He walked around to the back and found no sign of tampering.

Sergeant Lussier and Officer Bernier knew there had been thefts of scrap metal and copper pipe in the area. Lussier called his police department. He learned that the property owner at 16 Tattoo Road was in a nursing home. Sergeant Lussier and Officer Bernier informed the plaintiff that they intended to detain him until the state police arrived. They asked if he was willing to wait. The plaintiff was agreeable. It was snowing and the defendants placed the plaintiff in a police car.[2] A state police officer, defendant Trooper William Freeman, arrived 20 to 30 minutes later.

---

[2]The plaintiff alleges, and the defendants dispute, that he was handcuffed.

3

When Trooper Freeman arrived, he saw a pickup truck parked in the driveway.   The bed of the truck was filled with things, including an aluminum boat and a cement mixer.   He observed marks in the snow which he suspected were made from dragging items to the truck.   Defendant Troopers Luke LaRue and Kevin Dowd arrived next. LaRue transported one of the men to the state police barracks for processing and Dowd transported the plaintiff.   Trooper Dowd learned that Freeman intended to charge the suspects and assisted him with processing.

The plaintiff was charged with larceny in violation of Conn. Gen. Stat. § 53a-119, criminal trespass in the third degree in violation of Conn. Gen. Stat. § 53a-109 and criminal mischief in the third degree in violation of Conn. Gen. Stat. § 53a-117.   The charges were later dismissed.

The plaintiff previously had been convicted of a felony.   At the time of his arrest, he was on probation.   He subsequently pleaded guilty to violation of probation.

The plaintiff commenced this action pursuant to 42 U.S.C. § 1983 against the Putnam police officers and the Connecticut state troopers alleging false arrest and malicious prosecution.   The Putnam defendants and the state trooper defendants both move for summary judgment.

II.   Standard for Summary Judgment

Summary judgment may be granted only if "the movant shows that

4

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact "exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor." Zann Kwan v. Andalex Gr., LLC, 737 F.3d 834, 843 (2d Cir. 2013). The evidence adduced at the summary judgment stage must be viewed in the light most favorable to the non-moving party and with all ambiguities and reasonable inferences drawn against the moving party. See, e.g., Caronia v. Philip Morris USA, Inc., 715 F.3d 417, 427 (2d Cir. 2013). The court's "function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Tolan v. Cotton, 134 S. Ct 1861, 1866 (2014).

III. Discussion

   A.   False Arrest

The defendants move for summary judgment on the plaintiff's false arrest claim.

"In order to prevail on a claim of false arrest, a plaintiff must show that '(1) the defendant intentionally arrested him or had him arrested; (2) the plaintiff was aware of the arrest; (3) there was no consent to the arrest; and (4) the arrest was not supported by probable cause.'" Edelman v. Page, No. 3:00cv1166(JAM), 2015 WL

1395893, at *11 (D. Conn. Mar. 25, 2015)(quoting <u>Sharnick v. D'Archangelo</u>, 935 F. Supp.2d 436, 443 (D. Conn. 2013)).  In addition, "the Second Circuit has held that favorable termination [of the underlying criminal proceedings] is an element of false arrest under Connecticut law." <u>Ruttkamp v. De Los Reyes</u>, No. 3:10cv392(SRU), 2012 WL 3596064, at *12 (D. Conn. Aug. 20, 2012).

    1.  <u>Favorable Termination</u>

The defendants first argue that they are entitled to summary judgment because the plaintiff cannot show that the criminal proceedings terminated in his favor.

A plaintiff "may satisfy the favorable termination element by showing that the charges . . . were discharged without a trial under circumstances amounting to the abandonment of the prosecution without request by him or arrangement with him." <u>Ruttkamp v. De Los Reyes</u>, No. 3:10cv392(SRU), 2012 WL 3596064, at *12-13 (D. Conn. Aug. 20, 2012.)  A nolle prosequi "satisfies the 'favorable termination' element as long as the abandonment of the prosecution was not based on an arrangement with the defendant." <u>Id.</u> "However, a nolle will preclude a subsequent case for malicious prosecution when it is made as part of a plea bargain or under other circumstances that indicate that the defendant received the nolle in exchange for providing something of benefit to the state or victim." <u>Id.</u>

The defendants contend that the plaintiff's claim fails

because the charges were nolled as a result of a "negotiated plea arrangement" and therefore, cannot constitute a favorable termination. (Doc. #45 at 16.)  In support, the defendants submit the transcript from the plea hearing in state court. (Doc. #43, Ex. J.)

The defendants' argument is unavailing.  The transcript is not ambiguous.  It reflects that during the hearing, defendant's counsel argued that there was no probable cause for the charges and requested a dismissal.  The court granted the motion and dismissed the charges.  (Doc. #43, Ex. J at 13.)  The defendants have not shown that they are entitled to summary judgment on this ground.

2.  <u>Probable Cause</u>

The defendants next argue that they are entitled to summary judgment because there was probable cause to support the plaintiff's arrest.

To defeat a false arrest claim, an arresting officer need not have had probable cause to arrest the plaintiff for the specific offense invoked by the officer at the time of the arrest, or the particular offense with which the plaintiff was charged.  <u>See</u> <u>Jaegly v. Couch</u>, 439 F.3d 149, 154 (2d Cir. 2006).  A false arrest claim fails if there was probable cause to arrest the plaintiff for any offense.  <u>Id.</u>

"A police officer has probable cause to arrest someone if he or she has knowledge or reasonably trustworthy information that would suffice to warrant a person of reasonable caution in the

belief that the person to be arrested has committed a crime."
Coderre v. City of Wallingford, No. 3:08cv959(JAM), 2015 WL
4774391, at *3 (D. Conn. Aug. 13, 2015), aff'd, No. 15-2877-CV,
2016 WL 4821533 (2d Cir. Sept. 13, 2016).  "The court must look to
the totality of the circumstances to determine whether an arresting
officer had probable cause to effect the arrest . . . and must use
an objective standard in making this assessment. . . ." Torlai v.
LaChance, No. 3:14cv185(JCH), 2015 WL 9047785, at *3 (D. Conn. Dec.
15, 2015)(citations and quotation marks omitted).  "[P]robable
cause 'depends upon the reasonable conclusion to be drawn from the
facts known to the arresting officer at the time of the arrest . .
. .'" Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. 2006).

     Even if an arrest is not supported by probable cause, a police
officer can prevail in a false arrest case pursuant to the doctrine
of qualified immunity if there was "arguable probable cause" to
arrest.  Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004).
"Arguable probable cause exists if either (a) it was objectively
reasonable for the officer to believe that probable cause existed,
or (b) officers of reasonable competence could disagree on whether
the probable cause test was met." Garcia v. Does, 779 F.3d 84, 92
(2d Cir. 2015) (internal quotation marks omitted).

     The defendants argue that there was probable cause to arrest
the plaintiff for larceny in the sixth degree in violation of Conn.
Gen. Stat. § 53a-125b, and criminal mischief in the third degree in
violation of Conn. Gen. Stat. § 53a-117.  In the alternative, they

contend that there was at least arguable probable cause because "police officers of reasonable competence could conclude that probable cause existed to arrest the plaintiff for larceny and criminal mischief." (Doc. #45 at 23.)

Under Connecticut law, "a person is guilty of larceny when, with intent to deprive another of property[3] or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner." Conn. Gen. Stat. § 53a-119. An element of larceny is a "specific intent to deprive another of property or to appropriate the same to himself." State v. Papandrea, 120 Conn. App. 224, 230-31, aff'd, 302 Conn. 340 (2011). Larceny in the sixth degree is larceny where "the value of the property or service is five hundred dollars or less." Conn. Gen. Stat. § 53-125b(a).

The plaintiff argues that the elements of larceny are not met because the items at issue were "trash" and that "there was no intent to take something that had not been discarded." (Doc. #46 at 2, 5.)

On the record before the court, there is no genuine issue of material fact that at least arguable probable cause existed for the plaintiff's larceny arrest. The undisputed facts establish that the plaintiff was on the property of 16 Tattoon Road without the permission of the owner; that he took, among other things, an

[3]Property is defined as "any money, personal property, real property, thing in action, evidence of debt or contract, or article of value of any kind." Conn. Gen. Stat. § 53a-118.

aluminum rowboat and cement mixer from the property, again without permission; and that he put them in his pickup truck.  Officers of reasonable competence could disagree on whether the probable cause test was met.

Arguable probable cause also existed for the plaintiff's arrest for criminal mischief.  A person is guilty of criminal mischief in the third degree when "having no reasonable ground to believe that such person has a right to do so, such person: (1) intentionally or recklessly (A) damages tangible property of another, or (B) tampers with tangible property of another and thereby causes such property to be placed in danger of damage . . . ."  Conn. Gen. Stat. § 53a-117.  It is uncontroverted that the plaintiff lifted, carried and piled the items into the bed of the pickup truck, thereby "tamper[ing]" with the property and "causing it to be placed in danger of damage."  On the record before the court, officers of reasonable competence could disagree on whether the probable cause test was met.  Accordingly, the defendants are entitled to qualified immunity as to the plaintiff's section 1983 false arrest claim.

B.  <u>Malicious Prosecution</u>

The defendants next move for summary judgment on the plaintiff's malicious prosecution claim.

In order to prevail on a § 1983 claim against a state actor for malicious prosecution, "a plaintiff must show a violation of his rights under the Fourth Amendment . . . and establish the

elements of a malicious prosecution under state law." <u>Shattuck v. Town of Stratford</u>, 233 F. Supp. 2d 301, 306 (D. Conn. 2002).  "To show a violation of his Fourth Amendment rights, a Section 1983 plaintiff asserting a malicious prosecution claim 'must . . . show some deprivation of liberty consistent with the concept of 'seizure.'" <u>Plude v. Adams</u>, No. 3:12cv69(AWT), 2013 WL 943730, at *1 (D. Conn. Mar. 11, 2013).  Under Connecticut state law, to establish malicious prosecution, the plaintiff must demonstrate that the "(1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff;[4] (2) the criminal proceedings terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice." <u>Torlai v. LaChance</u>, No. 3:14cv185(JCH), 2015 WL 9047785, at *5 (D. Conn. Dec. 15, 2015).  "[M]alice may be inferred from lack of probable cause." <u>Brown v. Aybar</u>, 451 F. Supp. 2d 374, 384 (D. Conn. 2006).  "If a plaintiff is unable to prove any element, his claim, necessarily, fails." <u>Torlai</u>, 2015 WL 9047785, at *5.

As with false arrest claims, the existence of probable cause is a complete defense to a claim of malicious prosecution.  However, "[t]he probable cause inquiry in the context of a

---

[4]"To initiate a prosecution, a defendant must do more than report the crime or give testimony. He must play an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." <u>Manganiello v. City of New York</u>, 612 F.3d 149, 163 (2d Cir. 2010).

malicious prosecution claim is distinct from the probable cause inquiry relevant to an assessment of a false arrest claim." Torlai, 2015 WL 9047785, at *6.  Although a false arrest claim fails if there was probable cause to arrest the plaintiff for any offense, in the malicious prosecution context, there must be probable cause for the specific offenses charged.  Id.  See D'Angelo v. Kirschner, 288 F. App'x 724, 726 (2d Cir. 2008).

The defendants argue that they are entitled to qualified immunity because there was arguable probable cause.

The court "must analyze the qualified immunity issue separately with respect to each of the . . . charges" at issue. Ostroski v. Town of Southold, 443 F. Supp. 2d 325, 338 (E.D.N.Y. 2006).  A police officer has qualified immunity from a malicious prosecution claim if the officer had arguable probable cause for the specific crimes charged.  Jean v. Montina, 412 F. App'x 352, 354 (2d Cir. 2011).  Arguable probable cause to charge exists if there was arguable probable cause to arrest the plaintiff for the crimes in question and no "new information learned subsequent to [the] arrest" made it "manifestly unreasonable for the defendant officer to charge the plaintiff" with those crimes.  Id.

Applied to these facts, where arguable probable cause exists to arrest the plaintiff for larceny and criminal mischief, and there is no claim that the defendants learned any new information subsequently that would make the decision to charge the plaintiff objectively unreasonable, arguable probable cause to charge exists

for these offenses.  See id. at 355.  See Williams v. City of New York, No. 14cv7158(JPO), 2016 WL 3194369, at *6 (S.D.N.Y. June 7, 2016)("The Court's determination that there was arguable probable cause to defeat [plaintiff's] false arrest claim also precludes his malicious prosecution claim, as Defendants are equally entitled to qualified immunity.")

All that said, as to the criminal trespass charge, the defendants concede that probable cause did not exist.[5]  (Doc. #45 at 20.)  They acknowledge that "with regard to criminal trespass, the information known by the defendants justified only citation for the charge of simple trespass in violation of Conn. Gen. Stat. § 53a-110, an infraction for which a custodial arrest is not authorized."  (Doc. #45 at 20-21.)  On this record, the defendants do not argue, and the court cannot conclude, that the defendants are entitled to qualified immunity as to this charge.

Finally, the defendants argue in a cursory fashion that the plaintiff's malicious prosecution claim as to the criminal trespass charge fails because the plaintiff was "lawfully in police custody"

---

[5]Conn. Gen. Stat. § 53a-109 provides:

(a) A person is guilty of criminal trespass in the third degree when, knowing that such person is not licensed or privileged to do so: (1) Such person enters or remains in premises which are posted in a manner prescribed by law or reasonably likely to come to the attention of intruders or are fenced or otherwise enclosed in a manner designed to exclude intruders . . . .

It is undisputed that the property at issue was neither fenced nor posted.

on larceny and criminal mischief charges and therefore suffered "no deprivation of liberty" under the Fourth Amendment. (Doc. #45 at 19.)

The defendants' argument appears to suggest that a malicious prosecution claim is precluded where there is probable cause as to any charge. That is not the law in this Circuit. See Posr v. Doherty, 944 F.2d 91, 100 (2d Cir. 1991)(probable cause on one charge does not foreclose a malicious prosecution cause of action as to other criminal charges involving different elements). See also Flynn-Rodriguez v. City of New York, No. 14CV2287(JBW), 2016 WL 4468186, at *9 (E.D.N.Y. Aug. 24, 2016)(holding there was no authority to support defendants' argument that plaintiff must demonstrate a "unique deprivation of liberty" as to a resisting arrest charge where she was lawfully prosecuted on other charges).

III. Conclusion

For these reasons, the defendants' motions for summary judgment are granted in part and denied in part. The sole remaining claim is the plaintiff's malicious prosecution claim as to the criminal trespass charge.

SO ORDERED at Hartford, Connecticut this 23rd day of September, 2016.

_____/s/_____
Donna F. Martinez
United States Magistrate Judge